UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL BROWN, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>DETAILXPERTS FRANCHISE SYSTEMS, LLC,<br><br>        Defendant. | Case No.  18-cv-02430-SVK<br><br>**ORDER ON MOTION TO DISMISS SECOND AMENDED COMPLAINT AND MOTION TO TRANSFER**<br><br>Re: Dkt. No. 54 |

        Plaintiffs Bobcat 1 Enterprises, Inc. and Michael Brown entered into a Franchise Agreement with Defendant DetailXPerts Franchise Systems, LLC to operate a vehicle detailing franchise in Morgan Hill, California.  After operating the franchise for some period of time, Plaintiffs notified Defendant they were rescinding the Franchise Agreement and filed this lawsuit, alleging that Defendant had made various fraudulent misrepresentations during negotiation of the Franchise Agreement.  *See* Dkt. 53 (Second Amended Complaint ("SAC")).  In an order dated September 12, 2018, the Court granted Defendant's motion to compel arbitration based on an arbitration provision in the Franchise Agreement covering the claims asserted in the initial complaints.  Dkt. 34.  In the same order, the Court denied Defendant's motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3), denied without prejudice Defendant's motion to transfer the case to the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a), and stayed the case pending completion of the arbitration  *Id*.

        Approximately 13 months later, on October 15, 2019, the Court lifted the stay because Plaintiffs had not yet initiated arbitration.  Dkt. 41.  The Court subsequently set a schedule for further proceedings on the pleadings, which resulted in Plaintiffs filing the SAC.  Dkt. 53.  Defendant then filed the present motion to dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6) and/or to transfer the case to the Eastern District of Michigan pursuant to

28 U.S.C. § 1404(a). Dkt 54. Plaintiff opposes the motion. Dkt. 63.

Pursuant to Civil Local Rule 7-1(b), the Court deems this matter suitable for determination without oral argument. Having carefully considered the briefs, the case file, and the relevant law, the Court **DENIES** the motion to dismiss and **DENIES** the motion to transfer the case to the Eastern District of Michigan for the reasons that follow.

## I. BACKGROUND

Plaintiff Michael Brown is a resident of California, and Plaintiff Bobcat 1 Enterprises, Inc. is a California corporation with its principal place of business in Gilroy, California. SAC (Dkt. 53) ¶¶ 1-2. Defendant DetailXPerts Franchise Systems, LLC is a Michigan limited liability company with its principal place of business in Chattanooga, Tennessee. *Id.* ¶ 3.

In late 2016, the parties entered into a Franchise Agreement. *See* Dkt. 54-2. The Franchise Agreement includes an arbitration provision that provides:

> **22.1 Mediation and Arbitration.** Except for controversies, disputes or claims related to the enforcement of the Marks by the Franchisor, the covenants not to compete, or any lease of real estate, equipment or vehicles all controversies, disputes or claims between the Franchisor, its officers, directors, shareholders, members, managers, subsidiaries and affiliated companies and their shareholders, officers, directors, agents, members, managers, employees and attorneys (in their representative capacity) and the Franchisee (and its owners and guarantors, if applicable) arising out of or related to: (1) this Agreement or any other agreement between the parties or any provision of such agreements; (2) the relationship of the parties hereto; (3) the validity of this Agreement or any other agreement between the parties or any provision of such agreements; or (4) any Licensed Method, shall be first be submitted for non-binding mediation to the American Arbitration Association ("**AAA**") on demand of either party and, in the event the parties are unable to resolve their differences in mediation, then for binding arbitration to the AAA on demand of either party. Such mediation and arbitration proceedings shall be conducted in Detroit, Michigan, and shall be heard by a single mediator or, if necessary, by a single arbitrator in accordance with the then current mediation rules or Commercial Arbitration Rules of the AAA, respectively, except as otherwise provided in this Agreement.

Ex. 54-2 § 22.1.

Section 22.4 of the Franchise Agreement sets forth the parties' agreements on governing law and choice of forum:

> **22.4. Governing Law/Consent to Venue and Jurisdiction; Jury Waiver.** All disputes to be arbitrated by the Franchisor and the Franchisee shall be governed by the Federal Arbitration Act (the "FAA") and no procedural arbitration issues are to be resolved pursuant to any state statutes, regulations or common law. Except to the extent governed by the FAA, the United States Trademark Act of 1946 (Lanham Act, 15 U.S.C. Sections 1051 et seq.) or other federal law, this Agreement shall be interpreted under the laws of the state of Michigan and any dispute between the parties shall be governed by and determined in accordance with the substantive laws of the state of Michigan, except that any state law regulating the sale of franchises or governing the relationship of a franchisor and a franchisee shall not apply unless its jurisdictional requirements are met independently without reference to this Section 22.4, which laws shall prevail in the event of any conflict of law. The Franchisee and the Franchisor have negotiated regarding a forum in which to resolve any disputes which may arise between them and have agreed to select a forum in order to promote stability in their relationship. Therefore, if a claim is asserted in any legal proceeding involving the Franchisee, its officers, directors, managers or partners (collectively, "Franchisee Affiliates") and the Franchisor, its officers, directors, managers or sales employees (collectively, "Franchisor Affiliates"), the parties agree that the exclusive venue for disputes between them, other than an arbitration proceeding as provided in Section 22.1 above, shall be in the state and federal courts of Detroit, Michigan and each party waives any objection they may have to the personal jurisdiction of or venue in these state and federal courts or arbitration in Detroit, Michigan.
> THE FRANCHISOR, THE FRANCHISOR AFFILIATES, THE FRANCHISEE AND THE FRANCHISEE AFFILIATES EACH WAIVE THEIR RIGHTS TO A TRIAL BY JURY.

*Id.* § 22.4.

The Franchise Agreement also states that "[n]otwithstanding the above mediation and arbitration provisions, the Franchisor and the Franchisee will each have the right in a proper case to obtain injunctive relief and any damages incidental thereto from a court of competent jurisdiction" and that "[a]ny such action will be brought as provided in Section 22.4 ..." *Id*. § 22.5.

On or about January 22, 2018, Plaintiffs informed Defendant that they were rescinding the Franchise Agreement and ceased operating the franchise. Dkt. 53 ¶¶ 9-10.

On April 24, 2018, Plaintiffs filed this lawsuit. Dkt. 1. As discussed above, the Court granted Defendant's motion to compel arbitration, but Plaintiffs did not initiate arbitration and ultimately filed the SAC on January 26, 2020. Dkt. 53. The SAC asserts claims for: (1) declaratory relief on the grounds that the arbitration clause is unenforceable; (2) violation of the California Franchise Investment Law, Cal. Corp. C. § 31200 *et seq.* (the "CFIL"); (3) unfair competition and business practices in violation of California Business and Professions Code

1  § 17200 *et seq.*; (4) fraudulent misrepresentation, deceit, and concealment; (5) negligent

2  misrepresentation, and (6) unjust enrichment. *Id.*

## II.   LEGAL STANDARD

### A.   Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. In ruling on a motion to dismiss, the court may consider only "the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Metzler Inv. GmbH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008). In deciding whether the plaintiff has stated a claim, the court must assume the plaintiff's allegations are true and draw all inferences in the plaintiff's favor. *Usher v. City of L.A.*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Dept' of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).

### B.   Motion to Transfer Venue Pursuant To 28 U.S.C. § 1404(a)

A district court "[f]or the convenience of parties and witnesses, in the interest of justice" may transfer an action to another district where it might have been brought. 28 U.S.C. § 1404(a). This section aims "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotation marks and citation omitted). It also gives "discretion [t]o the district court to adjudicate motions for transfer according to an individualized, case-by-

case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen*, 376 U.S. at 622).

In making a determination under Section 1404(a), the Court considers (1) the convenience of the parties; (2) the convenience of witnesses; and (3) the interest of justice. 28 U.S.C. § 1404(a); *Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270, 279 (9th Cir. 1979). The Court may also consider and weigh:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). Additionally, the presence of a forum selection clause and "the relevant public policy of the forum state" are "significant factors" in the court's § 1404(a) analysis. *Id.* at 499.

The moving party has the burden of showing that the proposed transferee district is the more appropriate venue. *Id.*

### III.   DISCUSSION

#### A.   Motion to Dismiss

In its motion, Defendant argues that the SAC should be dismissed because although the arbitration agreement in the Franchise Agreement contains an exception for actions seeking injunctive relief, the SAC does not seek an injunction. Dkt. 54 at 4-6. In their opposition, Plaintiffs concede that the arbitration agreement covers the claims in the SAC. Dkt. 63 at 4. However, Plaintiffs now argue that the arbitration agreement itself is unconscionable. *Id.*

The parties agree that although a dispute over the validity of a contract containing an arbitration clause must be arbitrated, the issue of whether the arbitration clause itself is unconscionable is for the court to decide. *Id.* at 8; *see generally* Dkt. 67 at 1; *see also Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2778 (2010); *Bridge Fund Capital Corp. v. Fastbucks*

*Franchise Corp.*, 622 F.3d 996, 1000 (9th Cir. 2010).   Plaintiffs state that California law governs this question (Dkt. 63 at 8-9), whereas Defendants state that Michigan law applies (Dkt. 67 at 4-5). According to Defendants, under both California and Michigan law, a contract must be both procedurally and substantively unconscionable to be rendered invalid.  Dkt. 67 at 4-5; *see also Armendariz v. Found. Health Psycare Servs., Inc.*, 24 Cal. 4th 83, 99 (2000); *Lozada v. Dale Baker Oldsmobile, Inc.*, 91 F. Supp. 2d 1087, 1100 (W.D. Mich. 2000).  California courts use a sliding scale to determine unconscionability—greater substantive unconscionability may compensate for lesser procedural unconscionability. *Id*.   However, although "the two types of unconscionability need not both be present to the same degree," a contract provision is unenforceable "only if it is *both* procedurally and substantively unconscionable."  *Shroyer v. New Cingular Wireless Svcs., Inc.*, 498 F.3d 976, 981 (9th Cir. 2007) (internal quotation marks and citations omitted; emphasis added).  Similarly, "both substantive and procedural unconscionability are required to hold an agreement unenforceable" under Michigan law.  *Whirlpool Corp. v. Grigoleit Co.*, 713 F.3d 316, 322 (6th Cir. 2013).

Thus, although unconscionability is ultimately a question of law to be decided by this Court, "numerous factual inquiries bear upon that question" and "only where the extrinsic evidence is undisputed will the court be able to determine unconscionability absent predicate findings of fact."  *McColloum v. XCare.net, Inc.*, 212 F. Supp. 2d 1142, 1150 (N.D. Cal. 2002) (internal quotation marks and citations omitted).    Moreover, because both procedural and substantive unconscionability are required, "disputed questions of fact with respect to *either* the procedural or substantive aspects of the contract will preclude a legal determination of unconscionability."  *Id.* (emphasis added).

In general, procedural unconscionability focuses on oppression or surprise.  *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280 (9th Cir. 2006).  "Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice, while surprise involves the extent to which the supposedly agreed-upon terms are hidden in a prolix printed form drafted by the party seeking to enforce them."  *Id.* (internal quotation marks and citations omitted).  Here, on the issue of procedural unconscionability, both parties submit declarations and other evidence.  *See, e.g.,* Dkt. 63-1 (Brown Decl.); 67-1 (Williams Affidavit). Whereas Plaintiff Brown states that the franchisor told him to sign the Franchise Agreement "as

is," Defendant's authorized representative denies that the franchisor told Brown that the Franchise Agreement was a "take it or leave it situation" or that the franchisor would not negotiate. *Compare* Dkt. 63-1 ¶ 5 *and* Dkt. 67-1 ¶¶ 14-15.  These disputed questions of fact preclude a determination at this motion to dismiss stage of whether the arbitration provision is procedurally unconscionable.  Because the Court cannot make a determination of procedural unconscionability at this stage, it also cannot decide the overall question of unconscionability, which requires a finding of at least some procedural unconscionability even if there is a strong showing of substantive unconscionability (a question that the Court declines to reach at this stage).  *See Shroyer,* 498 F.3d at 981; *Whirlpool Corp.*, 713 F.3d at 322.

The SAC contains allegations that the arbitration clause in the Franchise Agreement is both procedurally and substantively unconscionable.  Dkt. 53 ¶ 157.  Accepting the allegations of the SAC as true, as the Court must do on a motion to dismiss, the Court finds that Plaintiff has stated a claim that the arbitration agreement is unconscionable.  Accordingly, Defendants' motion to dismiss is **DENIED.**

### B.     Motion to Transfer

Defendant argues that if the Court does not dismiss the SAC, this case should be transferred to the Eastern District of Michigan pursuant to the forum selection clause in the Franchise Agreement.  Dkt. 54 at 6-8.  Plaintiff opposes, arguing that because the franchise that is the subject of this action was located in California, the forum selection clause in unenforceable under the California Franchise Relations Act ("CFRA").  Dkt. 63.  In its reply, Defendant argues that even if the CFRA bars enforcement of the forum selection clause, the case should be transferred for pursuant to 28 U.S.C. § 1404(a) or on the grounds of forum non conveniens.  Dkt. 67 at 11-13.

"[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*," whereas "Section 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system." *Atl. Marine Const. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 60 (2013).  Here, the forum selected in the Franchise Agreement is the "state and federal courts of Detroit, Michigan," and Defendant seeks transfer to the Eastern District of Michigan.  Dkt. 54-2 §22.4; Dkt. 54.  Accordingly, the Court will analyze Defendant's motion to transfer under Section

1404(a). However, "because both § 1404(a) and the *forum non conveniens* doctrine from which it derives entail the same balancing-of-interests standard, courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum." *Atl. Marine*, 571 U.S. at 61; *see also Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1087 (9th Cir. 2018).

"When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause" and "[o]nly under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) be denied." *Atl. Marine*, 571 U.S. at 62. The presence of a valid forum-selection clause requires district courts to adjust their usual Section 1404(a) analysis in three ways: (1) the plaintiff's choice of forum merits no weight; (2) the court should not consider arguments about the parties' private interests; and (3) a Section 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules, which may affect public interest considerations. *Id.* at 63-64.

However, the analysis set forth in *Atlantic Marine* applies only to a *valid* forum selection clause. *Id.* at 62 n.5 ("Our analysis presupposes a contractually valid forum-selection clause"). "In diversity cases, federal courts apply federal law in determining the enforceability of forum-selection clauses." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C 07-5944-SC, 2014 WL 1047207, at *2 (N.D. Cal. Mar. 13, 2014) (citing *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988)). Contractual forum selection clauses are prima facie valid, and the party seeking to avoid the forum selection clause bears a heavy burden of showing that the clause is invalid. *In re CRT Antitrust Litig.*, 2014 WL 1047207, at *2 (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 15, 17 (1972)). One circumstance in which a forum selection clause may be found invalid is if enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought. *In re CRT Antitrust Litig.*, 2014 WL 1047207, at *2 (citing *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004)).

A California district court applied these principles to find a forum selection clause in a franchise agreement invalid in *Frango Grille USA, Inc. v. Pepes Franchising Ltd.*, No. CV 14-2086 DSF (PLAx), 2014 WL 7892164, at *3 (C.D. Cal. July 21, 2014). The court's invalidity holding was based on California Business & Professions Code § 20040.5 in the CFRA, which states: "A provision in a franchise agreement restricting venue to a forum outside this state is void

with respect to any claim arising under or relating to a franchise agreement involving a franchise business operating within this state." This statute expresses the strong public policy of California, invalidates the forum selection clause in the franchise agreement, and renders the *Atlantic Marine* analysis inapplicable. 2014 WL 7892164, at *3; *see also Jones*, 211 F.3d at 498.

Likewise, the forum selection clause in the parties' Franchise Agreement in this case is invalid under Section 20040.5 of the CFRA. Accordingly, the Court must analyze the convenience factors without taking into account the forum selection clause. *See Frango Grille*, 2014 WL 7892164, at *4.

### 1. Propriety of transferee district

In analyzing a convenience transfer under Section 1404(a), the Court must first consider whether the proposed transferee district, the Eastern District of Michigan, is a "district or division where [the action] might have been brought." 28 U.S.C. § 1404(a). Here, the SAC alleges that Defendant DetailXPerts is a Michigan limited liability company, and Plaintiff does not argue that this case could not have been brought in the Eastern District of Michigan. *See* Dkt. 53 ¶ 3. Accordingly, the proposed transferee district is a district in which this action might have been brought.

### 2. Convenience factors

The Court next considers whether the relevant factors favor or disfavor transfer. The Court need not consider all the convenience factors articulated in *Jones*, and it "has the broad discretion to address some of these or other factors based on the particular facts of each case." *Johansson v. Cent. Garden & Pet Co.*, No. C 10-03771 MEJ, 2010 WL 2977725, at *2 (N.D. Cal. Dec. 2, 2010) (citation omitted).

Many of the *Jones* factors weigh in favor of denying transfer. Most importantly, Plaintiff chose this forum. Generally, "[t]he defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). Moreover, the franchise that is the subject of this dispute was located in this state. *See* Dkt. 54-2; Dkt. 53 ¶ 18. The Court also recognizes the "strong public policy of the State of California to protect California franchisees from the expense, inconvenience, and possible prejudice of litigating in a non-California venue." *Jones*, 211 F.3d at

9

498.

To be sure, some factors weigh in favor of transferring the case to the Eastern District of Michigan. The Michigan district court is more familiar with Michigan law, which the parties' Franchise Agreement selects as the governing law. *See* Dkt. 54-2 § 22.4. Defendant has argued that the cost of litigating in Michigan is less than the cost of litigating here. Dkt. 54 at 7. Moreover, Defendant has presented evidence that Plaintiff's attorney is counsel of record in three consolidated cases in the Eastern District of Michigan involving DetailXPerts. *Id.* Defendant also argues that those pending Michigan cases and this case "likely involve many of the same potential witnesses and proofs." *Id.* at 7-8.

However, Plaintiff chose this forum, the franchise that is the subject of this dispute was located in this state, and California has a "strong public policy to provide a protective local forum for local franchisees." *Jones*, 211 F.3d at 499. Defendant has made no showing that the evidence or witnesses will be more accessible to the Michigan district court than this Court. Indeed, in opposing Plaintiffs' argument as to why the chosen Michigan venue for arbitration is unconscionable, Defendant admits that its principals "spend significant time in Chattanooga, Tennessee, and would also face a travel burden and associated costs" in connection with an arbitration in Michigan. Dkt. 67 at 9. Although Defendant points to other cases in the Eastern District in Michigan that involve DetailXPerts franchisees, it appears that Defendant filed those cases, and Defendant cites no authority for the proposition that Defendant's own conduct in filing cases in another forum should displace Plaintiff's chosen forum. Moreover, Defendant does not address whether any efficiency could be achieved by transferring this case to the Michigan district court, such as through consolidation. In any event, to the extent the pending cases in Michigan involve evidence that will overlap with the evidence in this case, many of the same efficiencies can be achieved by using that evidence in this case without transferring the case itself to Michigan.

On balance, the Court concludes that transfer to the Eastern District of Michigan would not serve the convenience of the parties or witnesses or the interests of justice. Defendant has not carried its burden of proving that transfer is warranted. Accordingly, the motion to transfer is **DENIED.**

## IV. CONCLUSION

For the reasons discussed, the motion to dismiss and motion to transfer are **DENIED**. The Court **ORDERS** as follows:

1. The parties must meet and confer by telephone or videoconference (not email) regarding a schedule that provides for trial not more than one year from the date of this order. Specifically, the parties must discuss whether discovery is necessary or whether the case may proceed directly to motion(s) for summary judgment. If discovery is necessary, the parties must develop a discovery plan that specifically identifies the necessary discovery to be conducted and a reasonable, efficient schedule for completion of that discovery, along with the remainder of the case schedule.

2. The Court will hold a Case Management Conference on September 22, 2020. The parties must file a Joint Case Management Conference statement, which must include the detailed discovery plan and scheduling proposal developed in accordance with Paragraph 1 by September 15, 2020. If the Parties are unable to agree upon a schedule, the Joint Case Management Conference statement may contain competing proposals.

**SO ORDERED.**

Dated: August 31, 2020

SUSAN VAN KEULEN
United States Magistrate Judge

11